TYDEMAN v. PRINCE LINE, Limited.

(Supreme Court, Appellate Division, Second Department. March 3, 1905.)

1. SERVANT'S INJURIES—METHOD OF WORK—ASSUMPTION OF RISK.
In loading a vessel with bales of paper, the fact that the forward portion of the forward hatch was down prevented the longshoremen from moving the bales lowered into the hold as far forward as necessary, and, to obviate the difficulty, when a bale was lowered the tackle was carried around a stanchion and again fastened to the bale, when by starting the winch the bale was drawn forward into the position desired. *Held*, that a longshoreman, injured while moving a bale forward, who was familiar with the work, could not complain because the hatch covering was not removed.

2. SAME—NEGLIGENCE OF SERVANT.
Where the master of a gang of longshoremen furnished competent servants and proper machinery for unloading a vessel, and a servant working in the hold was injured owing to the operator of the steam winch used in lowering bales into the hold failing to stop it at the proper time, the master was not liable, the cause of the injury being the negligence of a fellow servant.

Appeal from Trial Term, Kings County.

Action by James W. Tydeman against the Prince Line, Limited. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOODWARD, JENKS, and HOOKER, JJ.

H. Snowden Marshall, for appellant.
Albert A. Wray (Charles D. O'Connell, on the brief), for respondent.

WOODWARD, J. The plaintiff, with an experience of four years, was engaged as a longshoreman by the defendant in loading bales of paper in the hold of the vessel, the Sailor Prince, on the 4th day of February, 1902. It appears from the evidence that the plaintiff constituted one of a gang of four men, who, in company with a gang of an equal number, were engaged in stowing away a cargo at hatch No. 1 of the ship. The cargo appears to have been well in, so that one-third of the hatchway was full. The covering of this hatchway consisted of three pieces, each about 18 feet long and 6 feet wide, and the after third of this hatch covering was down over the cargo which was already in place. The middle section was open and the last section forward was in place, one of the elements of negligence urged being that, by reason of this latter third being down, the workmen were obliged to use a different method in placing the bales of paper than otherwise would have been necessary. A winch operated by steam stood near this hatch-

way, and the rope known as the "fall" was rigged to pass through a pulley block attached to an arm extending from one of the masts of the ship. The bales of paper weighed from six to eight hundred pounds, and were attached to the fall by means of a sling, which was fastened around the bale of paper and hooked on the fall. When the bale was lowered into the hold of the vessel, the men composing the gang of which plaintiff was a member shoved the draft forward toward the bow of the vessel, and it is claimed, and admitted, that, because of the forward portion of the hatch covering being down, they were prevented from moving the bales as far forward as was necessary to properly stow it away. To meet this difficulty, the bale was lowered to the floor of the hold, the hooks were detached, and the fall was carried around a stanchion and again fastened to the bale, when, by starting the winch, the bale was drawn forward into the position desired. This was shown without dispute to be a common method of procedure, and we are of opinion that, as the plaintiff was familiar with the work, and knew what was being done, he is in no position to complain because the forward section of the hatch covering was not removed.

The only other foundation for the alleged negligence of the master is found in the contention of the plaintiff that the winch used was not properly prepared for the work which was under way. It appears that, when the bale of paper which caused the injury was lowered into the hold and pushed as far forward as possible, the plaintiff unfastened the fall and carried it around the stanchion as suggested above, and that the winch was started, drawing the bale forward and whipping it around the stanchion, throwing it back into practically the position from which it started, and that the plaintiff, who was in the rear of the draft, was knocked down and against the portion of the cargo already in place, sustaining injuries, the extent of which is not questioned. There is no suggestion that the winch was not a proper machine or that it was not in perfect condition, there is no effort to show that the rope used was not exactly what should have been used for this purpose, and there is no allegation that the defendant had failed in its duty to employ competent fellow servants; but the testimony was directed to an effort to show that the fall rope was not properly attached to the winch. One of the plaintiff's witnesses, who was at work in the hold with the plaintiff at the time of the accident, testified that he came on deck within a few seconds of the accident, and that at that time the fall rope was wound around the drumhead of the winch. Several of the plaintiff's witnesses testified as to this method of operation, and that it was not as safe as when the rope was fastened to the barrel or main drum of the winch. From this testimony it might be gathered that the winch has a large barrel or drum in the center, with smaller drums at the end, and that when the smaller drums are used it is customary to wrap the fall rope two or three times around the drum, and to operate the same by one man holding the end of the rope and slacking the same off as the draft is ready to be lowered, and drawing the rope tight so that the drum will wind it around when the fall is let loose,

bringing it back up from the hold. The other method is to fasten the rope to the main drum or barrel, operating it wholly by steam, the rope winding and unwinding, according to the motion given to the cylinder by the winchman, by turning on and off the steam. If it were important to determine which of these methods was actually in use on the day of the accident, we are of opinion that the weight of the evidence is against the apparent finding of the jury. But in the view we take of the question, this is not important; the master had performed its duty when it had provided a reasonably safe place for the plaintiff to work, and when it had supplied the plaintiff and his fellow servants with reasonably safe tools and appliances for the performance of such labor, and had provided an adequate number of competent men to perform the work. With the exception of the contention in reference to the hatchway, already discussed, there is no complaint in respect to any of these matters. There is no evidence that the defendant's general foreman directed the use of the winch in the manner which the plaintiff seeks to establish. The foreman distinctly testifies that he gave no such order, and that the winch was not so fitted for the performance of this work, so that there can be no reason for holding that he assumed to act in a matter which did not belong to the master, and it will hardly be recognized as the law of this jurisdiction that it was the duty of the master in this case personally to see to it that a perfect piece of machinery, in the control of competent employés, was not operated in an improper manner. If the work of putting in the cargo had been by horse power, and the defendant had furnished a proper horse and a proper harness, and had employed a competent man to drive the horse, and the same accident had occurred, would any one think of charging the master with negligence because the horse might not have been properly harnessed or properly attached to the lifting rope? If not, why is the master held liable here? There is no difference in principle; the matter of attaching the rope and operating the winch was one of detail which the master could delegate to competent servants, and whether the plaintiff's fellow servants performed the duty right or wrong has no bearing on the question of the defendant's liability. The accident happened because the winchman started up the machine and permitted it to run too far. The testimony indicated that it was dangerous to use the winch with the loose rope around the drumhead in lowering cargo—that the rope was likely to slip—but the undisputed evidence in this case is that the accident occurred when the winch was set in motion to raise the bale of paper and to move it forward in the ship, and there was no evidence to show that the rope did slip, or that the winch ran away from the control of the winchman, or that the accident was due to any other fact than that the winch was started and ran forward, winding up the rope just as it was intended to do, and that the winchman, for some unexplained reason, failed to stop the same as soon as it was necessary in order to prevent the accident. In any event, the accident resulted from the negligence of fellow servants, who are not shown to have been incompetent, and the plaintiff can-

not recover in this action. The principle announced in Hogan v. Smith, 125 N. Y. 774, 775, 26 N. E. 742, seems to us to be controlling here. See Kimmer v. Weber, 151 N. Y. 417, 422–423, 45 N. E. 860, 56 Am. St. Rep. 630, and authorities there cited.

The judgment and order appealed from should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur; HOOKER, J., not voting.